UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DARRELL DOLLIVER, | ) | |
| | ) | |
| v. | ) | Criminal No. 04-77-B-W |
| | ) | Civil No. 08-244-B-W |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Darrell Dolliver is pressing a 28 U.S.C. § 2255 motion, his principal contention being that he did not actually "use" or "possess" a firearm in connection with his drug trading – he only received firearms in exchange for drugs. This question of "use" and/or "possession" was relevant to Count Seven of Dolliver's indictment. Dolliver entered into a plea agreement as to Counts One and Three (drug distribution conspiracy and possession of a firearm by a felon) with the understanding that he would proceed to a bench trial on stipulated facts for a determination of the legal question posed by Count Seven. The remaining four counts were dismissed.

For purposes of all three of his § 2255 claims, Dolliver relies on Watson v. United States, __US.__, 128 S.Ct. 579 (Dec. 10, 2007), a pithy linguistic decision, that answered the question of "whether a person who trades his drugs for a gun 'uses' a firearm 'during and in relation to ... [a] drug trafficking crime' within the meaning of 18 U.S.C. § 924(c)(1)(A)." Id. at 581. The Court held that it did not.

The brunt of this § 2255 proceeding is Dolliver's belief that his trial and appellate counsel (two different attorneys) were not performing effectively when they did not press a Watson-esque argument, thereby delivering assistance of counsel that fell below the level required by the Sixth Amendment of the United States Constitution. More specifically, Dolliver articulates three

ineffective assistance of counsel grounds in his § 2255 motion and memorandum. First he contends that his plea/trial attorney rendered constitutionally ineffective assistance when he failed to raise an available defense, failed to accurately argue precedent, and did not properly challenge the sufficiency of the evidence on the "use" and "possession" prongs of 18 U.S.C. § 924(c)(1)(A). Second, Dolliver faults this attorney for advising him to stipulate to a bench trial on Count Seven and for advising him to accept the other terms of the plea agreement. And, third, Dolliver contends that his attorney on appeal performed below the Sixth Amendment standard when he failed to seek certiorari review by the United States Supreme Court in light of the split in the circuits and the pending decision in Watson.[1]

After pleading guilty to Counts One and Three, Dolliver acquiesced to a bench trial under a version of 18 U.S.C. § 924(c)(1) that allowed this court in a September 22, 2005, order to expressly find him guilty on Count Seven because he 'possessed' – rather than necessarily 'used' – firearms within the meaning of 18 U.S.C. 924(c)(1). Trial counsel argued that there was insufficient use or possession of the firearms to justify conviction on this count and appellate counsel followed suit. The First Circuit Court of Appeals rejected this effort on July 13, 2007. These arguments and determinations were made prior to the issuance of Watson.

***Discussion***

---

[1] In his 28 U.S.C. § 2255 memorandum, Dolliver:

> specifically refutes any and all admissions attendant to the Plea Agreement's terms or its consummation, whether direct or by inference, that may indicate the Movant's knowledge as to the "stolen" character of any firearms he ever received. Furthermore, DOLLIVER's admission to the Government's stipulation of evidence tendered at trial should in no way be interpreted that he was aware, in receiving firearms, that those who traded them to him had "stolen" the firearms, a fact that he has consistently denied.

(Sec. 2255 Mem. at 8.) The issue of receipt of stolen firearms dropped out of the case in terms of the crimes of conviction when the parties agreed to the dismissal of all but Counts One, Three, and Seven. (See Sept. 15, 2005, Tr. at 5, Crim. No. 04-77-B-W, Doc. No. 112.) There were four stolen firearms attributable to him for sentencing purposes, but Dolliver is not raising a § 2255 challenge to this Court's sentencing calculations nor were the sentencing calculations necessarily based upon Dolliver's "knowledge" of the stolen character of the firearms he received.

Section 924(c)(1) of title 18 sets a minimum five-year term of imprisonment for any person who "during and in relation to any crime of violence or drug trafficking crime" ... uses, carries, or who "in furtherance of any such crime" possesses a firearm. 18 U.S.C. § 924(c)(1). The United States Supreme Court has addressed the "use" facet of § 924(c)(1) three times. See Watson v. United States, __ U.S __, 128 S.Ct. 579 (Dec. 10, 2007); Bailey v. United States, 516 U.S. 137 (1995); Smith v. United States, 508 U.S. 223 (1993). In Smith v. United States, the Court held that a person "uses" a firearm within the meaning of § 924(c)(1) when firearms are traded for drugs. The Court reasoned that, based on the "ordinary and natural" meaning of "use," "it is both reasonable and normal to say that petitioner 'used' his MAC-10 in his drug trafficking offense by trading it for cocaine." Smith, 508 U.S. at 230. Bailey v. United States revisited the "ordinary and natural" meaning of "use" and concluded that mere possession of a firearm does not constitute "use" within the meaning of 18 U.S.C. § 924(c)(1). 516 U.S. at 145. According to Bailey, § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Id. at 143. Watson then held that receiving a gun for drugs was not sufficient to establish liability for "use" under § 924(c)(1).

***Dolliver's Case***

On September 15, 2005, this Court conducted a hearing on the acceptance of pleas as to Counts One, the knowing and intentional conspiracy to distribute and possess cocaine and heroin count, and Three, the possession of a firearm by someone previously convicted of a felony count, and then conducted a bench trial on Count Seven.[2]

[2] As part of the change of plea discussion the Court clarified with Dolliver that he was not going to contest for sentencing purposes the possession of firearms specified in the indictment: a Luigi-Franchi Hunter 12-gauge shotgun; a Luigi-Franchi Hunter 20- gauge shotgun; a Sears and Roebuck 20-gauge shotgun; a Stevens Model 20-

The Court was careful to impress upon Dolliver the importance of his decision to proceed with a bench trial on stipulated facts as to Count Seven. After the court took some time to explain the nature of the charge in Count Seven, the potential penalty, and the right to have the matter tried to a jury, the following discussion took place:

> DEFENDANT: Can I talk to my lawyer a second?
> (COUNSEL AND CLIENT CONFER)
> MR. HADDOW: Your Honor, I've just been explaining to Mr. Dolliver the procedure, because I think it's a little confusing to him.
> THE COURT: Right. And I don't want anything to be confusing. I'm glad you're consulting with your lawyer. This is an important thing you're doing here, Mr. Dolliver. First what I want you to understand is this, that if you wanted to, if you were to tell me right now, "Judge, I would prefer to have this issue on Count Seven resolved in front of a jury," there's no problem in your doing that. No problem whatsoever. We have juries here all the time. They're here to protect people, it's a constitutional right to present facts in front of a jury and present evidence in front of a jury. Your lawyer is extremely able. He'd be able to cross-examine witnesses in front of the jury, he'd be able to select people, exercise challenges to people he thinks might be biased, he'd be able to peremptorily eliminate certain people that he thinks for any reason wouldn't be appropriate. He'd be able to seat the jury, make an opening statement, closing argument, cross-examine the Government witnesses, call witnesses on your behalf. You'd have the right to testify if you wanted to, but you'd also have the right not to testify if you chose to, and he would--ultimately at the end of the trial I would instruct the jury on the law and they would come to a verdict, and you have that right. If you want to exercise it, you have the right. On the other hand, if you would prefer not to exercise that right, you have that right, too. Do you understand?
> DEFENDANT: Yes.
> THE COURT: There'd be no--because you're--do I understand this correctly that at least on Count Seven, is there--what is the positions of the parties regarding acceptance on Count Seven?
> MR. PERRY: That he--under the terms of the plea agreement, he would still get it.

---

gauge shotgun; a Colt MK-IV series .45-caliber firearm; a Butler Associates .22-caliber gun; a North American Firearms Corporation .22-caliber gun; a Colt MK-IV series 380-caliber firearm, a RG Model R631 .38 firearm; a Colt Sawyer .270-caliber; a Browning Arms 12-gauge; a Remington model 20-gauge shotgun; a Remington model 12-gauge shotgun; a Remington model .22 caliber rifle; an Interarms Mark X 30-06; a Ruger Mini-14; a bolt-action rifle 77. (Sept. 15, 2005, Tr. at 23-26.) Dolliver expressly acknowledged that he "agreed with the Government to recommend to the Court that [it] conclude that [Dolliver] possessed all of these firearms." (Id. at 26.) I note this because Dolliver's involvement with firearms was quite extensive, putting his narrow focus on the one exchange targeted by Count Seven in some perspective.

THE COURT: He would still get it?
MR. PERRY: That's correct.
THE COURT: Even if he were to chose a jury?
MR. PERRY: No. No, that's not discussed in the plea agreement.
THE COURT: So what's the agreement?
MR. PERRY: The agreement is that he would agree to a bench trial.
THE COURT: All right.
MR. PERRY: The--if he does not agree to a bench trial, we would take the position, your Honor, that the plea agreement's null and void and--because he's breached it, he's going against his agreement. The Government then would ask to be released from the plea agreement, and we'd be back to square one.
THE COURT: On all matters?
MR. PERRY: On all matters.
THE COURT: All right. Well, let me--that's a little different. So let me explain that to you, Mr. Dolliver. I'm sure you've talked to your lawyer about this, but you need to understand it. You've arrived at a plea agreement, and part of the plea agreement, and maybe the best thing to do is take that plea agreement out and take a look at it again. Do you have that in front of you, sir?
DEFENDANT: Yes.
THE COURT: Page two of the plea agreement talks about the following, the first full paragraph. "The parties further agree to have a bench trial on Count Seven," that's the charge we're talking about here, "which charges the defendant with violating 18 USC Section 924," and that's supposed to be a (c). "The parties further agree that the stipulation attached to this agreement will be submitted to the Court in determining whether the Government has proven the defendant's guilt beyond a reasonable doubt on Count Seven." And you have a copy of that stipulation? Have you seen that?
DEFENDANT: Yes.
THE COURT: All right. What this amounts to is this. That you still have the right to a jury trial on Count Seven if you want to exercise it. However, if you do exercise the right to a jury trial, the Government is going to take the position that this plea agreement is null and void. Do you understand?
DEFENDANT: I think so. I just liked it when you had said that I can--everything was going through on the two charges and then that I may have the Number Seven charge for a jury trial.
THE COURT: Right. You still have that right. But if you exercise that right, the Government is going to take the position that the agreement to plead guilty is null and void and they're gonna start from scratch. Do you understand?
DEFENDANT: Well, then it could be worse, it's--he's gonna try to make it worse than what it is now?
THE COURT: That's what the Government's position would be. Do you want to talk to your lawyer for a moment?
DEFENDANT: Yeah.

> THE COURT: Why don't--this is a little bit complicated, Mr. Haddow, and I--I just want to be sure your lawyer--your client understands everything that's set forth here. Do you need to take a little time with him?
> MR. HADDOW: Let me discuss it with him for a moment.
> THE COURT: All right.
> MR. HADDOW: We have discussed it before, and I'm—
> THE COURT: Sure.
> (COUNSEL AND CLIENT CONFER)
> MR. HADDOW: Okay, your Honor, I think--I think I've explained it.
> THE COURT: All right. Mr. Dolliver, have--do you need more time to talk to your lawyer about this?
> DEFENDANT: I don't know--I think, I think what he just said, I understand it
> THE COURT: You think you understand it, or do you understand it?
> DEFENDANT: Well, I do. I do, if it's gonna change the plea agreement, I can see where that's only gonna get worse for me.
> THE COURT: All right. Well, what I want you to understand basically is that you--you still have the right to a jury trial. Now, in this case, because of the agreement, there would be an impact if you were to exercise your right to a jury trial. That impact would be that the Government would take the position that you've violated the terms of the agreement. You understand?
> DEFENDANT: Yes.
> THE COURT: So if you were to exercise that right, the issue of whether you violated the agreement would be before the Court, and I've have to make a decision whether you violated the agreement by demanding a jury, do you understand?
> DEFENDANT: Yes.
> THE COURT: All the rights that I've just described to you or described to you earlier that you would have if the matter were to go to jury would obtain if it were to go to jury trial. In other words, you'd have twelve people and all the rights that I just talked to you about would be available, do you understand?
> DEFENDANT: Yes.
> THE COURT: What I'm going to do is I'm going to ask the Clerk to formally inquire if you wish to waive the constitutional legal right to a jury trial. Are you ready?
> DEFENDANT: Yes.

(Id. at 32 -41.) The clerk then made inquiry and Dolliver signed the written waiver.

The proceeding next turned to the question of Count Seven. As background relevant to Dolliver's ineffective assistance claims against trial counsel, this count was subject to a motion to dismiss arguing:

> The Government alleges that Mr. Dolliver either accepted firearms in exchange for drugs or as collateral for later payment for drugs. The Government alleges that this activity either constitutes use of a firearm in relation to a drug trafficking crime, or the possession of firearms in furtherance of a drug trafficking crime.
>
> A split developed among the federal circuit courts as to whether a defendant had used a firearm in relation to a drug trafficking crime when he traded drugs for a firearm. See, e.g., United States v. Montano, 398 F.3d 1276 (11th Cir. 2005); United States v. Stewart, 246 F.3d 728 (D.C. Cir. 2001). The courts who have found that this did not constitute use of a firearm in relation to a drug trafficking crime distinguished the situation where a defendant traded a firearm for drugs. See Montano, supra.
>
> The Defendant urges the Court to dismiss Count VII, since this count involves either the Defendant's trading of firearms for drugs, or the Defendant's holding the firearms as collateral in the transaction. Merely accepting the firearms in trade or holding them as collateral should not give rise to criminal liability under the statute.

(Mot. Dismiss at 1-2, Crim. No. 04-77, Doc. No. 77)(footnote omitted). In a footnote counsel noted:

> This case cites a Sixth Circuit case that supports the view that a drugs-for-guns exchange does not meet the use-in-relation-to test. The Sixth Circuit has recently applied a different interpretation of § 924(c)(1), because this statute was amended in 1998. See United States v. Frederick, [406 F.3d 754 ] (6th Cir. May 5, 2005). The newer version of the statute added the language relating to possession of a firearm in furtherance of a drug trafficking crime. This decision holds that such an exchange meets the requirement for possession-in-furtherance of.

(Id. at 1 n1.) For its part the Government argued that Frederick with its post-1998-amendment analysis of § 924(c)(1) established a wide enough canopy to cover Dolliver's receipt of a firearm in exchange for drugs. (Resp. Mot. Dismiss at 2-3.) Neither side really delved deeply into the legal issue involved.

With respect to the Count Seven bench trial aspect of the September 15, 2005, proceeding, neither the Government nor the defense presented argument or evidence beyond the stipulation. (Sept. 15, 2005, Tr. at 42.) The Court summarized the stipulation:

> The stipulation says that on April 20, 2003, it was reported to the Bar Harbor Police Department that sometime within the week prior to April 20, 2003, a

> Luigi- Franchi Hunter 20-gauge shotgun, serial number F01606, and a Luigi-Franchi Hunter 20-gauge shotgun, serial number F069794, were stolen from a residence in Bar Harbor. Two, on or about April 20, 2003, the defendant, that's you, traded heroin and cocaine to the persons who stole the firearms. The defendant received the firearms in exchange for the drugs. Three, the firearms were operational at the time the defendant acquired them. And, four, these firearms were not manufactured in Maine and the firearms were transported in interstate commerce.

(Id. at 43.) From the bench the Court reached the following conclusion:

> Well, I have reviewed the stipulation and I have reviewed the submissions of the parties. What I'm going to do is indicate my conclusion which I think is really a matter of--more a matter of law than it is a matter of fact, since the matters have been fully stipulated to. But I will issue a formal written opinion addressing all of the arguments that have been raised by the parties in furtherance of this verdict. I find that there -- based on the stipulations of the parties -- that there is sufficient evidence to conclude beyond a reasonable doubt that Darrell Dolliver violated 18 USC Section 924(c)(1) and in so doing is guilty as charged to the charges set forth in Count Seven of the indictment. Now, let me explain just a little bit -- as I said I will further explain it in more detail in writing -- but what happened in this case is that there were at one time four circuit courts that had concluded that if a defendant transfers drugs to someone else and in exchange gets firearms, that that did not constitute a violation of Section 924(c)(1). There were four circuit courts that had come to precisely the opposite conclusion, the conclusion that this Court has arrived at. What occurred in the interim, however, between the time under which those cases were decided, or the law that was in effect at that time, is that in 1998 Congress enacted an amendment to Section 924(c)(1)(a). That amendment made it clear that one needed not actually use or carry a firearm, but it also criminalized any individual who in furtherance of a drug-trafficking crime possesses a firearm. The earlier decisions in which the circuit courts ruled that one who receives firearms for drugs did not violate Section 924(c) were based on the more restrictive statute. Possession is a broader use of the term and, therefore, under the new statute, this Court concludes that if you receive firearms for drugs, you have violated 924(c). Now, I would note that the First Circuit has not analyzed possession as such; however, the Sixth Circuit in the case of Frederick, which is 406 Fed. 3d at 764, has made the decision. In Frederick the police found both drugs and a rifle in an apartment pursuant to a search warrant. A bag of marijuana had the defendant's fingerprints on it, but the rifle did not. Mr. Frederick was charged with a violation of 924(c)(a), and at trial the Government offered evidence that Frederick had received the rifle as payment for drugs, and he was convicted. And the Sixth Circuit, after he appealed, affirmed that conviction. The Court held or noted that it had previously held trading guns for drugs was not a violation of 924(c)(1)(a) under the use element. And that's the Warwick case which you cited, Mr. Haddow. But held in Frederick the

> acquisition of the firearm in exchange for drugs is a sufficient nexus, specific nexus between the drugs and the guns to constitute possession in furtherance of a drug sale. The Court also noted that as a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell does promote or facilitate the illegal sale since some drugs sales would not take place if the defendant had not accepted a gun for payment. And then I would also note that this is consistent with authority that has been issued in the Second Circuit, United States versus Cox, which is 324 Fed. 3d 7784 at Note 2, which says, "Where defendants charged under 924(c) after this amendment trading drugs for a gun will probably result in a conviction." What the stipulation is reflects that the defendant traded heroin and cocaine to persons who stole firearms and he received firearms in exchange for these drugs, and therefore, under the current vision of 924(c)(a), I have concluded that that constitutes--that conduct as stipulated constitutes a violation of 924(c)(a) and that Mr. Dolliver is, in fact, guilty as charged of the charges set forth in Count Seven.

(Id. at 48-50.)

With regards to Count Seven, this Court explained in a supplemental written order following the bench trial:

> To satisfy the "in furtherance" requirement, the Government must prove "that the firearm was possessed to advance or promote the criminal activity." [United States v.] Grace, 367 F.3d [29,] 35 [(1st Cir. 2004)] (quoting United States v. Lawrence, 308 F.3d 623, 630 (6th Cir.2002)); see also United States v. Mackey, 265 F.3d 457, 460-61 (6th Cir.2001) (holding that the "term 'furtherance' should be understood in its ordinary or natural meaning," which is " 'a helping forward: advancement, promotion,' " and "the weapon must promote or facilitate the crime"). Here, the nexus between "possession" to "in furtherance of" a drug crime is the barter itself. This Court agrees with the Sixth Circuit's statement that trading drugs for guns "promotes or facilitates" the illegal sale, since the drug sales may not have taken place if Mr. Dolliver had not accepted guns as payment. Frederick, 406 F.3d at 764.

387 F.Supp.2d 83, 87 (D. Me.2005) (footnotes omitted).

For its part, the First Circuit Court of Appeals ruled as to this use/possession challenge:

> Appellant Darrell Dolliver ("Dolliver") challenges the sufficiency of the evidence supporting his conviction under 18 U.S.C. § 924(c)(1)(A)(i). His arguments do not acknowledge that he was convicted of possession of a firearm in furtherance of a drug trafficking crime, rather than use of a firearm during and in relation to a drug-trafficking crime, and he does not present any authority suggesting that his behavior here-the bartering of drugs for firearms-falls outside

> the reach of that statute as amended by Congress in 1998. Cf. United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir.2007) (holding that trading drugs for guns constitutes possession in furtherance of a drug trafficking crime under subsection 924(c)(1)); United States v. Boyd, 209 Fed.Appx. 285, 290 (4th Cir.2006) ("We conclude that accepting possession of firearms as payment for crack cocaine is possession in furtherance of a drug trafficking crime."); United States v. Frederick, 406 F.3d 754 (6th Cir.2005) ("As a matter of logic, a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell does promote or facilitate that illegal sale."); United States v. Cox, 324 F.3d 77, 84 n. 2 (2d Cir.2003) ("For defendants charged under § 924(c) after [the 1998] amendment, trading drugs for guns will probably result in [a conviction for possession in furtherance of a drug trafficking crime.]"). Given Dolliver's failure to present any argument in contravention of this growing consensus, we see no reason to set aside his conviction.

United States v. Dolliver, No. 06-1279, 2007 WL 2014905, 1 (July 13, 2007).[3]

The Supreme Court's Watson expressly overruled the First Circuit's United States v. Cotto, 456 F.3d 25 (1st Cir. 2006), which interpreted the "use" provision of § 924(c)(1). Even though this Court devoted some attention to the pre-Cotto circuit split vis-à-vis the § 924(c)(1) "use" inquiry, the First Circuit did not attempt to distinguish its own Cotto, which was subject to the Supreme Court's pending resolution of Watson, from Dolliver's § 924(c)(1)(a) plaint.

Be that as it may, it is clear that this Court rested its determination on the new "possession" alternative of § 924(c)(1). As relevant to that determination, in Watson the United States argued that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to prosecution" pursuant to the § 942(c)(1)(A) "possession" prong; the Supreme Court responded that § 924(c)(1)(A),

> now prohibits not only using a firearm during and in relation to a drug trafficking crime, but also possessing one "in furtherance of" such a crime. 18 U.S.C. § 924(c)(1)(A)… The Government is confident that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to prosecution" under this new possession prong. Brief for United States 27; see Tr. of Oral Arg. 41

3 The First Circuit denied a motion by the United States seeking to have this decision published.

> (Watson's case "could have been charged as possession"); cf. United States v. Cox, 324 F.3d 77, 83, n. 2 (C.A.2 2003) ("For defendants charged under § 924(c) after [the post- Bailey] amendment, trading drugs for a gun will probably result in ... possession [in furtherance of a drug trafficking crime]"). This view may or may not prevail, and we do not speak to it today, but it does leave the appeal to symmetry underwhelming in a contest with the English language, on the Government's very terms.

Watson, 128 S.Ct. at 585-86. This discussion leaves a dangling question about the scope of the § 924(c)(1) "possession" alternative.

For its part the United States relies principally on United States v. Washington, a case which contains the following rejection of a § 924(c)(1) non-"possession" -- as opposed to a non-"use" -- claim:

> While this case was on appeal, the United States Supreme Court decided Watson v. United States, __U.S. __, 128 S.Ct. 579, 586 (2007), which held that one does not "use" a firearm under 18 U.S.C. § 924(c)(1)(A) by receiving it in trade for drugs. Washington argues that Watson controls his case. Watson is inapposite because it addresses "use" of a firearm, not possession. See United States v. Wint, 261 Fed.Appx. 340, 342 (2d Cir.2008) (applying 4-level enhancement for possession of firearm, distinguishing Watson*);* United States v. Winfrey, 266 Fed.Appx. 651, 652-53 (9th Cir.2008) (remanding for determination of possession, after considering Watson).

528 F.3d 573, 574 (8th Cir.2008). This discussion is not a whole lot of help.

But the bottom line is that this Court has already grappled with the distinction between "use" and "possession" and the First Circuit affirmed that determination relying on Frederick and Luke-Sanchez,[4] cases that remain the landmarks in the § 924(c)(1) "possession" landscape.[5] See also United States v. Wint, Nos. 05-6087-cr, 06-2416-cr., 2008 WL 227962 (2d Cir. Jan. 29, 2008); Martinez v. United States, No. 07-20308-CIV, 2008 WL 4821686, 1 (S.D. Fla. Oct. 3,

[4] Cox examined the "use" aspect of § 924(c)(1) and the First Circuit's unpublished Dolliver is the only case to cite the Fourth Circuit's unpublished Boyd.

[5] United States Sentencing Guideline § 2K2.1(b)(6) also includes the bifurcated concepts of use and possession and there have been similar challenges to that provision. See, e.g., United States v. Epps, Civ. No. 7:08-cv-00081, 2008 WL 1924267 (W.D.Va Apr. 30, 2008; United States v. Wint, Nos. 05-6087-cr, 06-2416-cr., 2008 WL 227962 (2d Cir. Jan. 29, 2008).

2008); DeJesus v. United States, Civil No. 08-0724 (RBK), 2008 WL 2697346, 4 (D.N.J. July 1, 2008); compare United States v. Pruett, 523 F.3d 863, 863 -64 (8th Cir. 2008). In his reply memorandum Dolliver insists that there was reason for counsel to press a Watson-premised claim:

> At the bench trial, this Court's decision favoring guilt was guided by the idea of the "barter itself"; that is, "drugs for guns." At that point in time, the Court had, for guidance, the Supreme Court's decision in Smith …and Bailey…, neither of which was a paragon of clarity in DOLLIVER's situation…
>
> Since the Movant's conviction, however, the Supreme Court enunciated its decision in Watson…, which made a distinction between "trading guns for drugs" … and "trading drugs for guns"…. Watson did not state a new rule of law, but instead, clarified prior holdings on the subject. Even without the benefit of the Watson decision at his fingertips, DOLLIVER's former trial counsel could have argued the distinction of "receiving firearms as the end result of a drug sale as not falling within the ambit of 18 U.S.C. §924(c) simply because he had no original ownership of the firearms and that he committed no "act" involving "possession" to promote the drug sale; it was the buyer of the Movant's drugs who committed this act of "using" the firearms as currency. DOLLIVER's acceptance of the firearms was the terminus of the sale. There was no "promotion" of the firearm "possession" in the furtherance of an illicit narcotics transaction.
>
> While the Watson case interpreted a situation like DOLLIVER's in terms of the "use" and "carry" clause of Bailey, it did not specifically state that defendant Watson could still be found guilty if he had been charged under the "possession" prong of § 924(c). Furthermore, most appellate courts have not yet interpreted Watson in terms of the "possession" prong.
>
> In the absence of definitive clarity in the case law, and where DOLLIVER's behavior falls more closely to that in Watson rather than in Smith, he should not be held to a firearms conviction that his trial counsel could have challenged based on the argument that DOLLIVER had original possession of the firearms, and therefore, in no way could have furthered or facilitated the firearms possession by mere receipt of them at the conclusion of the drug sale; at least not where § 924(c) contains a requirement that the Movant had to have had the firearms in the first place – which he did not.

(Reply Mem. at 2-3.)

So Dolliver admits that his Count Seven argument relies on unsettled law. Although they attempted to challenge this court's "possession" analysis, one really cannot fault Dolliver's trial or appellate counsel for failing to persuade this Court and the First Circuit to go out on the limb

in construing the 1998 "possession" amendment. Strickland v. Washington, 466 U.S. 668 (1984) established the analysis for Sixth Amendment ineffective assistance of counsel claims. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). "To prove deficient performance," in a § 2255 proceeding, "a defendant must establish that counsel was not acting within the broad norms of professional competence." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (citing Strickland, 466 U.S. at 687-91). "Furthermore, to prove prejudice, a defendant must establish that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." Id. at 57-58 (citing Strickland, 466 U.S. at 694). "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). And, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill,11 F.3d 223, 225 (1st Cir. 1993).

With respect to trial counsel's failure to call Dolliver as a witness or adduce any evidence at the bench trial that would have shown he did not "use" or "possess" the firearms, the United States is correct that Dolliver has "not identified what evidence he would have given if called as a witness nor has he described the other evidence that trial counsel should have adduced at trial." (Gov't Resp. at 17-18.) See David v. United States, 134 F.3d 470 (1st Cir. 1998). In his reply

memorandum Dolliver does not attempt to address this deficiency (Reply Mem. at 1-4, Doc. No. 10.); he concedes that the § 924(c)(1) question "was more a matter of law than fact" (id. at 1). His argument is that he did not possess the firearm in question until after the drug transaction; this Court was aware of the sequence of events when it ruled on the Count Seven issue. And vis-à-vis the decision to plead guilty and counsel's advice on this score, had Dolliver been convicted on Counts Two, Four, Five and Six, he could have received sentences that ran consecutively to the terms imposed on Counts One, Three, and Seven. Dismissal of these four charges further benefitted Dolliver because if the convictions on Counts One, Three, or Seven were vacated for any reason, he could not be convicted or sentenced on the other four counts. Counsel's advice that Dolliver plead guilty to Counts One and Three and submit to a bench trial on Count Seven worked another benefit to Dolliver as he received a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1. The transcript of the hearing makes it clear that, had Dolliver proceeded to a jury trial on Count Seven, all bets were off as far as the Government was concerned.

Finally, it is Dolliver's contention that his appellate counsel's failure to file a petition for certiorari review ran afoul of his attorney's Sixth Amendment responsibilities because Watson was pending. (Reply Mem at 3.) Attached to Dolliver's 28 U.S.C. § 2255 motion are two letters. The first is from Dolliver's appellate counsel, Attorney Richard Foley. It reads:

> Dear Darrell:
> Enclosed herewith you will please find the First Circuit's whitewash of your appeal in the above referenced matter.
> Needless to say it's disappointing.
> Please give me your thoughts upon the matter.

(Doc. No. 1-4.) The second is a letter, on ruled paper and dated July 22, 2007, that is ostensibly[6] a copy of a letter sent from Dolliver to Attorney Foley:

> Dear Mr. Foley, how are you today?
>
> I'm not doing too well after receiving your letter about my appeal being denied.
>
> What I don't understand is how the judge at trial could find me guilty of the gun charge? It seems like he had his mind made up from the beginning, and the Court of Appeals just followed the same line of thought.
>
> This new "Watson" case thats been pending in the Supreme Court is the same as my situation, I want to continue my appeal by having you file a petition to the Supreme Court please. I mean if they granted "Watson" review, why not me? too, right?
>
> This is very important to me Mr.Foley because I don't know how to do it myself and have no money to hire anyone to do it for me, if this or any other "extra work" is something that you do not have to do for me I would agree to pay you for it at a later date if that would be possible.
>
> Oh, one more thing, you argued that I couldn't have "used" any gun in your brief, well how about arguing that I couldn't have "possessed" it either? It seems to me that the Federal Courts across the country can't make up their minds and I believe that the Supreme Court will look at my case. I hope and pray at least.

(Doc. No. 1-3.) Assuming that Dolliver did in fact send his July 22, 2007, letter to counsel and counsel actually received it, Dolliver had no constitutional right to have counsel file this pleading for him, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[W]e have rejected suggestions that we establish a right to counsel on discretionary appeals."). Dolliver does not maintain that he received any response from counsel refusing his request or promising that he would follow through and he offers no explanation why he was unable to file the petition on his own behalf – given that he had identified the Watson issue already -- during the 90-day period he had to do so. I add only that Dolliver is mistaken that his case was in a sufficiently similar posture as Watson's

[6] I say ostensibly because there is no real 'authentication' of this letter as having been written and sent at the time in question.

that a grant of review by the Supreme Court was likely; Watson made a point of indicating that it was not passing on the "possession" aspect of the 18 U.S.C. § 924(1)(c)'s 1998 amendment.

***Conclusion***

For the reasons above, I recommend that the Court deny Dolliver 28 U.S.C. § 2255 relief. I further recommend that no certificate of appealability should issue in the event Dolliver files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 11, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge